RALEIGH COUNTY CONSTRUCTION COMPANY *v.* AMERE GAS UTILITIES COMPANY

(No. 7571)

Submitted May 10, 1933. Decided June 10, 1933.

*J. W. Maxwell,* for appellant.

*McGinnis, Ashworth & Mann* and *Ben H. Ashworth,* for appellee.

KENNA, JUDGE:

The Raleigh County Construction Company brought suit in the circuit court of Raleigh County against Amere Gas Utilities Company for a balance claimed to be due under a contract by which the defendant engaged the plaintiff to dig certain ditches, estimated at eighteen miles, preparatory to the installation of a gas distributing system in the City of Beckley. The form of the suit was for the enforcement of a labor lien filed against the defendant company, and the controversy resolves itself into the question of what charges the plaintiff is entitled to make under its contract. The cause was successively referred to two commissioners in chancery and was heard on two commissioners' reports. Exceptions were taken to the reports by both the plaintiff and the defendant. It is upon the rulings of the court upon these respective exceptions that the appeal and cross-error assignments by the appellee are based.

An account filed with the plaintiff's bill covers all the charges, including the amounts of estimates that were paid from time to time as the work progressed, made for the entire performance of the contract. It will probably facilitate and clarify a discussion of the items of the controversy to set this account up and to deal with the several items embraced in it *seriatim,* instead of attempting a comprehensive general discussion of the entire matter of controversy. The account is as follows:

"Beckley, West Virginia, April 17, 1930.
Amere Gas Utilities Company,
To Raleigh County Construction Co.     Dr.
1.  147,790 lineal feet of ditch dug and back filled (exclusive of work hereinafter

shown) at contract price of 14c per lineal foot ..................................................................$ 20,830.60

2. 10,650.8 lineal feet of bituminous macadam, concrete and brick cut and replaced at contract price of 39c per lineal foot ............................................................$ 4,153.81

3. 10,650.8 lineal feet of ditch dug under same at contract price of 14c per lineal foot ................................................................ 1,491.11

4. Total amount of extra bituminous macadam, brick and concrete cut and replaced because of extra width of ditch at various places beyond the standard width fixed by contract price of 39c per lineal foot, figured and based upon the same ratio of yardage to price of 39c per lineal foot for standard width, being equal to 1183 lineal feet of standard width @ contract price of 39c per lineal foot........................ 463.32

5. Total amount of extra ditching dug and back-filled because of extra width or depth of ditch at various places beyond the standard width or depth fixed by contract price of 39c per lineal foot, figured and based upon the same ratio of yardage to price of 14c per lineal foot per standard width and depth, being equal to 9794 lineal feet of standard width and depth at contract of 14c per lineal foot (including 1183 feet under pavement mentioned in last item.) ................................................ 1,371.16

6. 4360 lineal feet of slate macadam cut, and not replaced at 35c per lineal foot.... 1,526.00

7. Force account rendered for labor performed in addition to the labor hereinbefore described under contract with said Amere Gas Utilities Company for digging ditches thru stony ground and other ditching for which the standard prices fixed as above did not apply; for employees used in laying out ditches and sundry other labor as shown on sheet hereto attached marked 'Force account rendered' ................................................ 2,449.78

8. Additional labor performed in addition to labor hereinbefore shown by shaping bottoms and sides of ditches not required to be done under standard specifications

for ditching @ 14c per lineal foot; which labor was performed at the request of Amere Gas Utilities Company; which labor is shown on sheet hereto attached marked 'Additional Force Account'.......    2,743.34

9. Bonus amount allowed under contract for performing contract before November 1, of digging 18 miles of ditch @ $200.00 per day, the work being performed on October 21; 10 days at $200.00 per day; which amount was to be paid by Amere Gas Utilities Company for this labor in addition to unit price set for ditching....$   2,000.00

| | |
|---|---|
| Total .....................................$ | 37,029.12 |
| Cash paid on account ............ | 21,361.98 |

Balance due ,...................$15,667.14.''

Item 1. The commissioner in chancery allowed this item subject to a deduction of $610.40, representing 4,360 lineal feet of ditching under slate macadam cut and not replaced, at fourteen cents per lineal foot. The trial court confirmed the commissioner's report in this respect, and the appellee assigns the ruling of the trial court as cross-error, it having excepted to the commissioner's report in that respect. The contract provided a charge of thirty-nine cents for cutting paving, digging the ditch thereunder and replacing the pavement. The lineal foot deduction from this item represents that number of lineal feet which had been included in a separate charge under Item 6. The defendant's theory is that the charge of thirty-nine cents includes both the breaking and the replacing of the pavement as well as the charge for the digging of the ditch thereunder. The plaintiff, on the other hand, contends that the charge for breaking and replacing the pavement, that is, thirty-nine cents, does not include the fourteen cents per lineal foot for the completion of the ditch itself. On this theory, plaintiff would be entitled to include the item under Item 6 and also under Item 1. The contract provision, in paragraph 12 which governs payment to be made and what is included therein for breaking pavement and replacing the same is as follows: ''* * * thirty-nine cents per lineal foot for breaking concrete, brick and macadam, and digging ditches under the same and replacing the same, as aforesaid.''. The

plaintiff contends that this question is governed by sections 3 and 7 of the contract, which, it says, make it plain that the contract requirement is simply to break the pavement and dig a ditch therein, not going below the undersurface of the pavement for the thirty-nine cents, with the fourteen cents to be added for any ditch extending below the undersurface of the pavement. We cannot subscribe to this construction of the contract. It would seem impossible that the contract should mean that the paving is to be broken, which, of course, means broken clear through, and removed, and should not include in the operation of breaking and replacing everything that was to be done with reference to the pavement itself. To say that the contract contemplates that the pavement is to be broken at one cost and that a different and additional price is to be paid for digging a ditch in it would be to attach to language a meaning not consonant with the common acceptation of its effect. We believe that the commissioner and the trial court were correct in the disposition made of this item.

Item No. 2 was allowed in full by both the commissioner in chancery and the trial court. Neither party excepted to this.

Item No. 3 was disallowed by the commissioner and disallowed by the court. The plaintiff (appellee) assigns this as cross-error. This item, in the sum of $1491.11, is based upon plaintiff's construction of the 39-cent charge referred to under Item 1, that is, that that charge included the breaking and replacing of pavement only and that an additional charge of fourteen cents per foot was to be made for digging the ditch under it. Plaintiff's contentions in that connection have been set forth under Item 1 above. For the reasons stated under that item, we are of opinion that the commissioner and the court below were correct in disallowing this item.

Item No. 4 represents a charge made by the plaintiff because, in the course of digging the ditches upon the location of the gas company's survey, it was found that they frequently encountered water pipes, sewer pipes and other obstacles which made it impossible to get the coverage for the pipe in the ditches on this location made by defendant. When this would occur, in order to get the ditch in solid ground, it would be necessary for the gas company to re-locate it and for the construction company to re-dig a ditch of sufficient

width to avoid the obstacle. The obstacles could not be discovered until they had been encountered in the digging. On any fair construction of this contract, considering the fact that the gas company was to make the survey and locate the ditches, it is perfectly plain that the construction company was to be paid for digging the ditch once. If, because of the location, it became necessary to dig the ditch more than once, (and digging it to a greater than the contemplated width is equivalent to just that) then it seems perfectly plain that they should be more than once paid. We believe that the trial court was correct in confirming the ruling of his commissioner on this question.

Item No. 5. The commissioner allowed $1205.54 of this item, disallowing $165.62 which was a charge of fourteen cents for ditch dug under pavement. The construction company assigns this disallowance as cross-error. This contention has been disposed of in our discussion of Item No. 1, on the basis of which, we believe, that the commissioner and trial court were correct in making this disallowance. The gas company excepts to the allowance of $1205.54 because it embraces the cost of extra width ditch and ditch dug to extra depth. There is a great deal of proof in the record concerning how much of this item is comprised of extra width ditch and how much of it is comprised of extra depth ditch. It is not necessary for us, in our view of the matter, to make this distinction. We have disposed of the matter of extra width and re-located ditch under Item 4. As to the extra depth, there is voluminous testimony concerning the meaning of the contract, the custom in construction work of this kind, and of the conduct of the parties in the course of the work, contended pro and con as having placed a practical construction and interpretation upon the terms of the contract itself. We consider, however, that the finding of the commissioner and of the trial court on this allowance is fully justified by the facts testified to by the gas company's chief engineer in charge of the work to the effect that he, in passing upon the estimates during the course of construction, allowed charges on the basis of the construction company's interpretation of the contract, that is to say, that he allowed additional compensation for extra depth ditch. He testified further that this allowance was cor-

rect. It is true that he explained that he had no authority to order work outside of the contract, and that the officers in charge of the gas company testified to the same effect, and, further, that they were not conscious at the time the estimates were allowed that this charge had been included. We do not believe that this turns upon a question of the actual authority of the chief engineer. The record shows beyond the peradventure of a doubt that he was placed by the gas company in general charge of this construction.. It shows that he exercised all authority over it. His instructions and directions were carried out and were followed without question. On the basis of the proof, there can be but little question that the gas company held him out as general manager with comprehensive authority over all of its undertakings in connection with this work. The construction company had a right to rely upon him as such and is not bound under the circumstances by any unknown restriction upon his powers in the premises. If what he did cannot be taken as an agreement made by him for the gas company, then it can certainly be taken as a construction of the contract binding upon the gas company in this controversy. We believe that the commissioner and the court below correctly allowed $1205.54 under this item.

Item 6. There is no exception to this allowance in the trial court, neither is there error nor cross-error assigned upon it here.

Item 7. The commissioner in chancery and the trial court both allowed this item in full. The gas company excepted in the trial court but makes no point of this allowance here.

Item No. 8 is for additional labor performed in shaping the bottoms and sides of the ditches. It is the contention of the construction company that shaping the bottoms and sides of the ditches in the manner that they were required to shape them was not within the contemplation of the contract. There are several provisions of this contract invoked by both the construction company and the gas company in apparent confidence that their conflicting respective contentions will be sustained by them. It may be said at the outset that the contract does contain provisions that are in apparent conflict. The trial court, evidently conscious of this fact, and in construing and applying the contract, undertook, not only to con-

strue the contract according to its words, but took the conduct of the parties under it as being the best rule for its interpretation and for its application to the concrete circumstances of the case. With the proof in as much conflict as it is, it was necessary for the trial chancellor to resolve the conflict in the proof, in order to determine just exactly what the conduct of the parties under the contract had been. Before conduct could be established which would throw light upon the interpretation of the conflicting provisions of the contract itself, it was necessary to do this. This necessarily involved the determination of matters of fact arising upon the testimony. From a careful perusal of this record, we cannot say that the trial chancellor's determination of these matters of fact showing the conduct of the parties under the contract, and the consequent interpretation of the contract itself by the rule of practical interpretation, was wrong. Paragraph 3 of the contract binds the contractor ''to dig the ditches to sufficient depth and back fill or refill the said ditches after the said pipes have been installed in said ditches so that the top of the pipe at all points is covered at least twelve inches below the *natural* surface of the ground. The pipe line is to be laid *so as to conform to the terrain,* but there *shall not be any sharp or mitered bends in the same.''* The uncontradicted testimony of Walter J. Campbell, vice-president and engineer for the construction company, is to the effect that the ditches were dug in the first instance in conformity to the terrain and so as to permit a minimum twelve-inch covering of the pipe at all points. Mr. Campbell further testifies that the gas company refused to accept the ditches so dug. Instead of this, their foreman required of the construction company a force of men who were used under him for the purpose, at the point where this extra work was done, of digging the ditches in a series of straight lines. These straight lines involved a departure from the terrain and also involved, contrary to the express provisions of the contract, laying the pipe in sharp or mitered bends. This was done in order to prevent strain upon the pipe and in order to prevent bends in the pipe that would weaken it and reduce the flow of gas. So much for the contention of the construction company. The gas company counters by contending that the construction company was required by their contract to dig the

ditches in exactly the manner that this force account was used to dig them in. They rely upon the first, third, fifth and the ninth paragraphs of the contract to sustain their contention on this item. We do not believe that any of the sections of the contract referred to in appellant's brief bear directly upon this controversy. The contract certainly says in plain terms that the ditch is to follow the natural terrain, that it is to provide for coverage of the pipe at least twelve inches below the natural surface of the ground, and that there shall be no sharp or mitered bends in it. According to the uncontradicted testimony of the witnesses for the construction company, this force account was incurred in a departure from the natural terrain, in putting the pipe lower than would be required by twelve-inch coverage from the natural surface of the ground, and in constructing it in such a manner as would involve sharp or mitered bends. We cannot say the trial court was in error in allowing this item.

Item 9. This item is a claim on the part of the construction company for a bonus of $200.00 per day for having completed eighteen miles of ditch ten days before October 31, 1929, the date fixed in the contract for determining, on the one hand, the bonus of the construction company, and on the other hand, the forfeiture to be paid by it for delay, under the terms of the contract. It was disallowed by the trial court. The contract originally estimated that there would be eighteen miles of ditch required to be dug for the full completion of the entire project. During the course of construction, this was extended from time to time until at its completion, there were approximately 30 miles of ditch dug. The claim for bonus on the part of the construction company is based on the contention that the original eighteen miles was a definite and agreed figure by which either the bonus or the penalty was to be arrived at. The gas company says that when the twelve miles were added, the bonus provision of the contract was virtually abandoned. It would seem clear that this situation would give rise to a controversy concerning the facts. It is not made clear where the original eighteen miles were to be located nor where the additional twelve miles were located. There is no proof to show that ten days before October 31, 1929, all of the original eighteen miles had actually been dug.

It is true that a total of eighteen miles of ditch had been dug and completed ten days prior to October 31, 1929, but whether or not the eighteen miles constructed at that time were the same eighteen miles contemplated at the date of the contract does not appear from the record. It might be that when the contract was expanded to thirty miles instead of eighteen, that the construction company was permitted first to dig eighteen miles of ditch out of the thirty-mile total that was of much simpler and easier construction than the eighteen miles originally in contemplation. These are all matters of fact submitted to the trial court on voluminous proof, and it nowhere appears that his decision of this item is so clearly wrong as to merit reversal.

The last assignment of error is on the question of costs. When this case was on appeal in this court before, the question of the second reference of the cause in the trial court was raised and decided. We there held that the discretion of the trial court on the second reference would not be disturbed. After the second reference was had and the cause decided on the basis of the two references in the trial court, the appellant objected to the action of the trial court in assessing all of the costs against it. The items of controversy in this matter have been extremely complicated. There are certain matters which enter into the determination and discretion of a trial chancellor in assessing costs, which perhaps do not appear in their entirety from a record in an appellate court. It does, however, appear from this record that the appellee substantially prevailed in the court below. This being so, and in recognition of the fact that the trial chancellor is in a more advantageous position to exercise a sound discretion in the matter of costs, we are of opinion that it does not here appear that that discretion has not been judicially exercised. Therefore, the action of the trial court in assessing costs will be affirmed.

Finding no error in the decree of the circuit court of Raleigh county, it will be, in all respects, affirmed.

*Affirmed.*